# SUPREME JUDICIAL COURT

### FOR THE

## COUNTIES OF BRISTOL, PLYMOUTH, BARNSTABLE AND DUKES COUNTY, OCTOBER TERM 1856, AT TAUNTON.

▬

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW, } Justices.
Hon. BENJAMIN F. THOMAS,

---

## Inhabitants of Hingham *vs.* Inhabitants of South Scituate.

In an indenture of partition of lands in 1744 among the heirs of one deceased in 1742, a description of one parcel as "fifty nine acres of land lying in S., being part of the homestead of the said deceased," is no evidence of his having had a dwelling in S. in 1695.
Grants of land are admissible in evidence as circumstances tending to show that the grantee, at their respective dates, dwelt in that part of the town in which the land was.
A description, in a town record, of land laid out in 1696, as "adjoining to the fence of C.'s home pasture," is admissible, against a town subsequently created out of part of that town, to prove that C. then dwelt in that part of the town in which the land was.

Action of contract for the support of a pauper. Trial in the court of common pleas at April term 1854 before *Briggs*, J.,

who instructed the jury that they would be authorized, upon the evidence in the case, (which is stated in the opinion,) to find a verdict for the plaintiffs. And to this ruling the defendants alleged exceptions, which were argued at October term 1854.

*E. Ames,* for the defendants.

*P. Simmons & N. C. Berry,* for the plaintiffs.

BIGELOW, J. In order to determine the competency and relevancy of the evidence, to the admission of which exception was taken by the defendants, it is important to ascertain with accuracy the precise question at issue between the parties. It is admitted that the pauper, for whose support the action is brought, followed and had the settlement (through her husband) which Samuel Curtis had on the 2d of May 1720, when his son Benjamin, the ancestor of the pauper's husband, came of age. It is also agreed between the parties that said Samuel Curtis resided in the old town of Scituate, comprising the territory which now forms the two towns of Scituate and South Scituate, from the 10th of October 1694 to the time of his death, which took place about the year 1742. From this it follows that said Samuel Curtis gained his settlement under the *St.* of 4 W. & M. (1692) by which it was enacted that a person should gain a settlement by dwelling in a town three months, without being warned out. Anc. Chart. 251. This provision continued in force until 1701, when the *St.* of 13 W. 3, was passed, by which twelve months' residence in a town, without being warned out, was required in order to charge a town with the support of a person residing therein. Anc. Chart. 364. Samuel Curtis therefore, having resided in the town of Scituate for three months from the 10th of October 1694, without having been warned out, thereby gained a settlement in that town. The subsequent act of 1701 could not in any way affect the settlement of persons who had already acquired one under the prior act. By the third section of the *St.* of 1849, *c.* 13, incorporating the defendant town, it was provided, that "said towns of Scituate and South Scituate shall be respectively liable for the support of all persons who now do or shall hereafter stand in need of relief as paupers, whose settlement was gained by or derived from a settlement

gained or derived within their respective limits." Under this provision the plaintiffs, in order to recover in the present action, were bound to show by satisfactory proof that Samuel Curtis, on the 11th of January 1695, when his three months' residence without warning expired, resided in that part of the old town of Scituate, which is now comprehended within the limits of the present town of South Scituate. This was the precise point at issue between the parties, upon which the whole controversy hinged.

To maintain their case, the plaintiffs offered in evidence an office copy of an indenture of partition, bearing date February 15th 1744, between Joseph Thomas and Abigail his wife, a daughter of said Samuel Curtis, of the one part, and Elizabeth Curtis, another daughter of said Samuel, of the other part. This deed contained a description of several parcels of land, and, among others, one which was recited to be " fifty nine acres of land lying in said Scituate, being part of the homestead of the said Samuel deceased." The plaintiffs relied upon this. recital in the deed to prove that Samuel Curtis resided thereon when he gained his settlement in the town of Scituate. To this evidence the defendants objected, and it is upon the competency of this proof that the question now arises for our consideration.

It seems to us very questionable whether the statement in the deed that the fifty nine acres were part of the homestead of Samuel Curtis was competent at all, as between the parties to the present suit. Recitals in deeds are admitted as proof in tracing a line of title to real estate as between parties and privies, and also to establish descent, relationship, births, marriages and deaths, and the times when such events happened. So, too, they are competent when they are the language of a party to a deed or other instrument, and relate to present existing facts and circumstances concerning himself or his estate. 1 Greenl. Ev. §§ 22, 24, 104. The case of *Bridgewater* v. *West Bridgewater*, 7 Pick. 191, comes within the latter branch of the rule, where the recital of a devisor in his will, that a certain estate was his homestead, was held to be admissible. But we know

of no authority extending the rule beyond these limits.  A mere statement in a deed of past occurrences, by way of narration or description, not coming within the range of pedigree or title, is not admissible evidence to establish that such occurrences actually happened.

But if the recital or statement in the deed was competent, it does not, of itself, prove that Samuel Curtis ever resided within the limits of the present town of South Scituate.  The fifty nine acres are described as a " part of his homestead."  It does not state that his house or dwelling place was upon the land thus described.  It might well have made part of a large tract of land, comprising an entire estate occupied as a farm or homestead, but the place of residence of the owner might have been on a different parcel, not within the limits of the defendant town.  The recital is equally consistent with the hypothesis that Samuel Curtis resided upon some other part of his homestead, as upon these fifty nine acres.  It does not therefore, without other evidence showing that the place of the ancestor's residence was on this tract, in the slightest degree tend to sustain the burden of proof which the plaintiffs are to bear on this point, and for this reason it is wholly insufficient.

Still another and a stronger reason for its rejection is its entire irrelevancy.  Taken in its fullest and broadest extent, the recital goes no further than to show that these fifty nine acres were a part of his homestead in 1742, at the time of his death.  There was no proof in the case, to carry back his ownership or possession of them beyond that period.  The fact to be proved was the place of his residence, and whether it was within the limits of the present town of South Scituate on the 11th of January 1695.  To show that he resided on a certain estate forty seven years after that date, without any proof connecting him with it prior to that time, leads to no rational or legal inference concerning his domicil at the point of time in question.  The law presumes that a fact, continuous in its nature and character, like domicil, possession or seisin, when once established by proof, continues; and, in the absence of evidence to the contrary, legally infers therefrom its subsequent existence.  But we know

of no rule of law which permits us to reason in an inverse order, and to draw from proof of the existence of present facts any inference or presumption that the same facts existed many years previously.

The only other evidence offered was the testimony of a witness that he well knew the bounds of the parcel of land described in the indenture of partition as part of the homestead; that this parcel was wholly within the town of South Scituate ; that he recollected it for fifty six years, for the first twenty of which an old house upon it was occupied by two grandchildren of said Samuel, and that, as long as he remembered, it had always been called the Curtis Place. But neither of these two grandchildren was an ancestor of the pauper's husband, and there was no direct evidence that Samuel Curtis dwelt and had his home on said fifty nine acres.

We are therefore of opinion that the evidence contained in the recital of the deed, taken in connection with all the other evidence in the case, did not warrant a verdict for the plaintiffs ; and that, for this reason, the instructions of the court below were erroneous. *Exceptions sustained.*

A new trial was had in the court of common pleas at April term 1855, before *Byington,* J., who signed a bill of exceptions, of which the material part was as follows :

" The plaintiffs alleged, but the defendants denied, that the residence, by which Samuel Curtis gained a settlement, was upon a part of the old town of Scituate, now South Scituate.

" The plaintiffs did not allege within what particular period said Samuel gained such settlement, by living on the territory now South Scituate.; but claimed generally, or, to use their own expression, ' without regard to date,' that said Samuel gained such settlement in the old town of Scituate, by living on terri tory in what is now South Scituate, so as to communicate such settlement to his son Benjamin.

" The court ruled, as assented to by both parties, that to enti- tle the plaintiffs to recover, the burden of proof was on them to show that said Samuel gained his settlement in old Scituate by

dwelling on the territory of that part of said old town, which is now South Scituate, and that if they failed to satisfy the jury of that fact, the plaintiffs were not entitled to recover.

" The plaintiffs did not allege, nor offer any evidence to show when said Samuel or Benjamin came of age. But the defendants offered in evidence the records of the old town of Scituate, showing, or tending to show, that Samuel was chosen a constable of the old town of Scituate on the 27th of March 1695; that his oldest child was born on the 10th of October 1694 ; and that the said Benjamin was born on the 2d of May 1699 which the plaintiffs contested, and argued that the said Samuel might not have been of age when he was chosen constable, and that the entry of the birth of his said children, from the appearance of the record, was not entitled to belief, nor sufficient, under the circumstances, to satisfy the jury that said Samuel lived in any part of old Scituate on the 10th of October 1694.

" The court, on the defendants' request, instructed the jury, that if they should find that Samuel Curtis did live somewhere in the old town of Scituate on the 10th of October 1694, and was then of age, and continued to live therein until the 11th of January 1695, then said Samuel had on the last named day acquired a settlement; that his said settlement had then become fixed, and any removal to any other part of the same town, or any subsequent events, (he continuing to reside in old Scituate during his life,) could not alter his settlement; and that, unless the evidence in the case proved that said three months' residence was upon territory which is now a part of South Scituate, the plaintiffs were not entitled to recover.

" The court also, on the defendants' call, instructed the jury, that if said Samuel was of age on the 11th of March 1695, and had not before acquired a settlement, and did then live somewhere in old Scituate, and for the three months next following, and until the 12th of June 1695, then said Samuel acquired a settlement, and the settlement then became fixed, and any subsequent events, such as removing from territory in the present town of Scituate to territory in the present South Scituate, could not alter the character of his settlement; and then the bur-

den of proof would be on the plaintiffs to satisfy the jury that said three months' residence, ending with the 12th of June 1695, was upon territory now in the defendant town, or the plaintiffs were not entitled to recover.

" The plaintiffs, among other proofs, offered in evidence the records of the town of Scituate, showing a grant of land on the 12th of November 1696 to the successors of Thomas Chambers and John Curtis, and on the 12th of February 1696 a laying out, by surveyors, to the same persons, of part of the land so granted, described, in part, as " adjoining to the fence of his home pasture." The defendants, admitting said lands to be on the territory now South Scituate, objected to the admission of said evidence, on the ground that the ownership of said lands, without proof that said Samuel lived thereon, was not admissible. But the court overruled the objection ; and ruled that the ownership of said lands was a circumstance, among others, to be considered by the jury, tending to show in what part of the territory of old Scituate the said Samuel lived when he gained his settlement; and admitted the evidence.

" The defendants objected that, though the words in the latter record ' adjoining to the fence of his home pasture,' meant the home pasture of said Samuel, yet the same was mere hearsay, and inadmissible to go to the jury to aid in finding that said Samuel dwelt upon territory now in the town of South Scituate. But the court overruled the objection, and admitted the same to be read to the jury; and, instructed the jury that the same was evidence tending to show that said Samuel resided within the limits of the defendant town when he gained his said settlement in old Scituate.

" The plaintiffs offered in evidence a record of the proprietors of the common and undivided lands of Scituate, under the date of July 18th 1726, showing a laying out of five acres of land, admitted to be in the defendant town, to said Samuel Curtis ; to the admission of which the defendants objected, because the plaintiffs did not aver or offer to prove when said Benjamin came of age, nor pretend nor offer to show that said Benjamin, at the time of the laying out of said land to said Samuel, was under

the age of twenty one years. But, as the plaintiffs had offered evidence tending to show that about the year 1672 a by-law of the town, approved by the colony court of Plymouth, prevented a man from having land laid out to him, as successor of any one, unless he lived on the spot occupied by the person of whom he was successor; that Samuel was the successor of Chambers and John Curtis; and that Chambers and John Curtis lived on territory now South Scituate, prior to 1694; the court overruled the objection, and admitted the evidence; and instructed the jury that the same was admissible, and tended to show in what portion of the territory of old Scituate the said Samuel Curtis lived when he gained his settlement therein. The defendants excepted.

" Several other layings out of land in South Scituate to Samuel Curtis, subsequently to July 1726, were then admitted, under the same circumstances, to which the same objections were taken.

" To which rulings and instructions the defendants except, a verdict being returned for the plaintiffs; " and these exceptions were argued by the same counsel.

BIGELOW, J. This case, as it now comes before the court, appears in a very different aspect from that in which it was presented by the former bill of exceptions.

At the former trial, it was agreed between the parties that Samuel Curtis, the ancestor of the pauper's husband, through whom she derives her settlement, resided in the original town of Scituate from October 1694 until the 11th of January 1695, and by this three months' residence gained a settlement therein under *St.* 4 W. & M. Anc. Chart. 251. Under that agreement, the sole contention between the parties then was whether this residence was in the territory now belonging to the present town of Scituate, or within that portion which was set off and now forms the town of South Scituate. To this single issue the whole evidence in the case was directed at the former trial; and it was held, that proof of the residence of the ancestor in a particular place in 1742, without some evidence to carry it back and connect it with the period of time in

question, from October 1694 to January 1695, was irrelevant and incompetent.

The present bill of exceptions discloses a different state of facts; from which it appears that the plaintiffs did not confine themselves to any precise period of time, within which they alleged that the ancestor of the pauper's husband gained a settlement, by residing within the limits of the present town of South Scituate. On the contrary, they contended and offered evidence to prove that, at some time during his life, but at what precise period they did not undertake to designate, he did gain a settlement therein. It was therefore to this broader issue, comprehending the entire lifetime of Samuel Curtis, that the evidence on the part of the plaintiffs was directed.

Nor was it necessary for the plaintiffs to fix upon any exact time, or any particular mode, in which the ancestor's settlement was gained. The real issue was, that a settlement was gained at some time; the precise time and mode of its acquisition were only incidental to the main inquiry. It was competent for the plaintiffs to present their case in various aspects and different alternatives, so that, if they failed in maintaining their case upon one theory, they might have recourse to another. They could not anticipate the view which might be taken of the facts developed at the trial. It was impossible for them to say, in advance, whether the jury would be satisfied that a settlement was gained by proof of a residence of the ancestor for three months from October 1694 to January 1695; or by the evidence of his being chosen a constable in March 1695; or by a residence of twelve months under *St.* 13 W. 3 (Anc. Chart. 364); or in some other mode and at some other time authorized by law. They had a right to present all material facts and circumstances tending to show a residence of Samuel Curtis within the limits of the town of South Scituate during his lifetime, as having a bearing, more or less remote, on the question of his settlement; leaving them to be applied by the jury, under the instructions of the court, according to the various alternations and aspects in which the issue was presented.

If the evidence failed to satisfy the jury that the settlement

of the ancestor was gained in the modes alleged prior to November 1696, then the grant to the successors of Thomas Chambers and John Curtis in November 1696, and the laying out of land in February 1697, would, in connection with other facts, tend to prove a residence in that part of the town, and a settlement subsequently acquired; or if, in the opinion of the jury, the evidence failed to show a residence and settlement in 1697, and prior to 1726, then it was competent for them to consider the proof of a grant of land in 1726 as having a tendency, with other evidence, to establish a settlement acquired at or about that date. All that the defendants could properly require was, that the evidence offered in support of the various alternatives in which the case was presented should not be misapplied, so as to make evidence, competent only in one aspect, available in support of another, to sustain which it was irrelevant and inadmissible. In this respect, the instructions of the court were full and accurate, and carefully guarded, so as to avoid misapprehension. It was clearly laid down, that if a settlement was once gained, in any of the modes prescribed by law, in any part of the original town of Scituate, it could not be changed by any removal to another part of the same town, or by any subsequent events.

In this view of the case, we are of opinion that the several grants of land offered by the plaintiffs were competent proof in support of some of the alternatives in which the issue was presented. It would have been otherwise if the inquiry had been confined, as at the former trial, to the period of time between October 1694 and January 1695. The weight of this evidence, and the influence it ought properly to have had on the minds of the jury, cannot be a subject of inquiry on this bill of exceptions. Its competency only can now be considered.

The fallacy of the argument urged by the counsel for the defendants consists in assuming that the grants in 1696, 1697 and 1726 were irrelevant and inadmissible, because, prior to either of those periods, the ancestor had acquired a settlement somewhere in the town of Scituate. That was one of the very questions in issue, which the jury were to determine. The court

could not assume it to have been proved, and reject evidence on that ground. The only proper course was to admit the evidence, and instruct the jury that, if a settlement had been proved in 1695, then the evidence was immaterial; that it could be relevant and competent only in the event that they were not satisfied of a settlement having been acquired in 1695; and were therefore obliged to seek for proof of a subsequently acquired settlement in the evidence relating to events occurring at a later period.

The only remaining exception is founded on the ruling of the court, that the description in the laying out of land on the records of the town of Scituate in 1697, to the successors of Thomas Chambers and John Curtis, containing the words, " adjoining to the fence of his home pasture," was admissible, as tending to prove where Samuel Curtis then resided. But it appears to us that it was very clearly competent. It was not only the recital or statement of a then existing fact, but it was the language of the town of Scituate, in a grant by them, to which the defendants are privy in law. 1 Greenl. Ev. §§ 23, 26. *Bridgewater* v. *West Bridgewater*, 7 Pick. 191.

*Exceptions overruled.*